| | | |
|---|---|---|
| JOSEPH R. RIVAS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 02738 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SCOTT LEVY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Dr. Joseph Rivas brings this suit against twenty-three Defendants alleging various violations of his constitutional rights under 42 U.S.C. § 1983, as well as other related federal and state claims.[1] R. 58, Am. Compl. On January 22, 2013, the Court authorized the United States Marshals Service to effect service of process on seven Defendants: Dr. H. Hunt Batjer, Northwestern Memorial Hospital, the City of Chicago, Officer Mark Bean, Officer Robert Markvart,[2] Officer Tony Howard, and Lieutenant Mary Sarlitto. R. 19, Jan. 22, 2013 Minute Entry; R. 79, May 21, 2014 Minute Entry. All seven of these Defendants now move to dismiss. R. 86, Batjer's Mot. Dismiss; R. 96, City Defs.' Mot. Dismiss; R. 108, Northwestern's Mot. Dismiss.[3] For the reasons discussed below, Defendants' motions are granted.

---

[1] This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Rivas's federal-law claims, and supplemental jurisdiction under 28 U.S.C. § 1367 for the state-law claims.

[2] Rivas's complaint spells Officer Markvart's last name as Markvard, but the City Defendants spell his name "Markvart." *See* R. 97, City Defs.' Br. at 1 n.1. The Court will use the City Defendants' spelling.

[3] Rivas was represented by appointed counsel when he filed his Amended Complaint. *See* R. 41, Aug. 23, 2013 Minute Entry (appointing counsel). After Defendants filed their

# I. Background

In evaluating the motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Rivas's favor. *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2079 (2011). Rivas's problems with Dr. Batjer, Northwestern Memorial Hospital's Chief of Neurosurgery, began in the mid-1990s, when Rivas and Batjer ran into each other at a conference. Am. Compl. ¶¶ 7, 23. At that conference, Batjer allegedly prevented Rivas from buying a tie with the logo of the American Association of Neurological Surgeons on it. *Id.* ¶ 24. Rivas alleges that Batjer's interference with his tie purchase was motivated by animus based on Rivas's race (Hispanic) and national origin. *Id.*

Over the next several years, Batjer continued to take action against Rivas, allegedly motivated by racial and national origin animus. Batjer had Rivas removed from the residency training program at Children's Memorial Hospital. *Id.* ¶ 29. He

---

motions to dismiss, appointed counsel moved to withdraw. R. 116, Mot. Withdraw. The motion was granted due to Rivas's unreasonable conduct. *See* R. 139, Dec. 2, 2014 Order. While the motion to withdraw was pending, Rivas was warned that, if it was granted, he would have to respond to the motion to dismiss. R. 138, Nov. 11, 2014 Minute Entry. He was also warned that no extensions would be permitted absent extraordinary circumstances. *Id.*; Dec. 2, 2014 Order. Rivas was ultimately given nearly two months to respond to the motions to dismiss, but he failed to file any response on time. Rivas did file various motions for miscellaneous relief about two weeks after his response was due, *see* R. 148; R. 151, but neither motion addressed the arguments in the motions to dismiss. He finally filed a response on February 16, 2015, R. 153, well after the deadline. Because Rivas failed to timely respond despite a warning that he must do so by January 20, 2015, the Court will not consider his late response or make arguments for him. If courts "are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("An unresponsive response is no response. In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so."). Furthermore, in light of Rivas's unreasonable conduct toward his recruited attorney, and the delay that the conduct caused in this case, the Court denies Rivas's motion to amend, yet again, the complaint. R. 155.

cancelled Rivas's interviews for a position at Northwestern Memorial Hospital. *Id.* ¶ 32. He ordered Rivas to leave a conference of neurosurgeons. *Id.* ¶ 33. And, at least twice, he prevented Rivas from asking questions about racial disparities among neurosurgeons. *Id.* ¶¶ 27, 35. Rivas's troubles with Batjer continued into 2008. In May of that year, Rivas went to Northwestern Memorial Hospital for various medical appointments. *Id.* ¶ 36. He ran into another doctor in the cafeteria, who later told Batjer that Rivas was in the building. *Id.* ¶¶ 36-37. Batjer, again motivated by racial animus, called hospital security and asked them to follow Rivas. *Id.* ¶ 37.

On June 11, 2008, Rivas went back to Northwestern Memorial Hospital for an appointment in the Same Day Surgery Center. *Id.* ¶ 39. After his appointment, he accidentally left the signed, executed copy of his lease in the waiting room. *Id.* About a week later, he called the hospital to ask about his lease, and the security office told him that they would look for it. *Id.* ¶¶ 40-41. He did not hear back from the security office. *Id.* ¶ 42. On July 30, 2008, Rivas was at Northwestern Memorial Hospital for a dental appointment. *Id.* Since he had still not heard anything about his lease, he decided to go back to the Same Day Surgery Center to ask about it. *Id.* When he reached the Same Day Surgery Center, the receptionist opened the locked door to allow Rivas to get to the nurses' registration desk. *Id.* ¶ 43. As Rivas was approaching the desk, several Northwestern security guards seized him. *Id.* ¶¶ 44-45. Rivas told the security guards that he was just going to ask the staff about his

lease, but they accused him of trespassing on Northwestern Memorial Hospital property. *Id.* ¶¶ 50, 53.

The security guards took Rivas to a holding room, where they gave him a notice which prohibited him from entering Northwestern Memorial Hospital again. *Id.* ¶ 51. If Rivas had medical appointments at the hospital, he would have to call security ahead of time and be escorted to and from each appointment. *Id.* ¶ 52. The security guards then called the police and reported that Rivas had trespassed. *Id.* ¶ 53. Officers Markvart and Howard arrested Rivas and took him to the police station, where Officer Bean processed the arrest. *Id.* ¶¶ 54-55. The following day, Bean and Sarlitto filed charges against Rivas for criminal trespass. *Id.* ¶ 62. Rivas was tried and found guilty of criminal trespass by a jury on December 3, 2008, and he was sentenced to one year of supervision. *Id.* ¶¶ 66-69. Rivas alleges that the "charges terminated in [his] favor and his supervision was terminated" on April 23, 2009, *id.* ¶ 70, but he does not allege that the conviction was vacated.

Because of the criminal trespass arrest, Rivas has struggled to find a job. *Id.* ¶ 71. Rivas alleges that Batjer has "spread the rumor in the neurosurgical community that the arrest at Northwestern Hospital was because Dr. Rivas was acting as a member of the neurosurgical faculty at Northwestern Memorial Hospital and improperly seeing and treating patients." *Id.* Specifically, he claims that Batjer "told Dr. Chabel of the University of Illinois at Chicago such false information. As a result, Dr. Chabel asked Dr. Rivas to leave a seminar at the University of Illinois at Chicago." *Id.*

Based on these events, Rivas filed a multi-count complaint against twenty-three defendants on April 25, 2011. *See* R. 1, Compl. Rivas moved to proceed *in forma pauperis*, but that motion was denied on January 30, 2012, because of Rivas's ability to pay the filing fee. R. 6, Jan. 30, 2012 Minute Entry. But by January 22, 2013, Rivas's financial status had deteriorated, so the Court appointed the Marshals Service to serve a limited set of Defendants. *See* Jan. 22, 2013 Minute Entry. Shortly thereafter, the Court granted Rivas's motion for *pro bono* attorney assistance. R. 23, Apr. 2, 2013 Minute Entry. After several recruited attorneys withdrew for various reasons, the Court recruited Mr. Bennett Rodick. R. 41, Aug. 23, 2013 Minute Entry. With the assistance of Rodick, Rivas filed an amended complaint. *See* Am. Compl. All of the served Defendants now move to dismiss Rivas's amended complaint.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep

plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

### A. Race Discrimination (Counts 1-3)

Rivas brings several claims under 42 U.S.C. § 1981 against Batjer, Northwestern Memorial Hospital, and all of the City Defendants (the City of Chicago and Officers Bean, Markvart, Howard, and Sarlitto). His first § 1981 claim is for "Race Discrimination in a Security Proceeding," in which he alleges that Defendants "acted with the intent to deprive [him] of equal protection or full and equal benefit of the laws" when they "restrained, detained, seized, arrested, charged, and/or prosecuted [him] wrongfully." Am. Compl. ¶ 78. His second § 1981 claim is for interference with prospective contracts, in which he alleges that Defendants' actions "interfered with and harmed [Rivas's] employment prospects."

*Id.* ¶ 86. The third § 1981 claim is for retaliation, in which he claims that Defendants instituted the seizure and arrest to retaliate for Rivas's complaints about discrimination against minority neurosurgeons. *Id.* ¶¶ 89-91.

All of Rivas's § 1981 claims must be dismissed on statute of limitations grounds. Although "a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582-83 (7th Cir. 2011). A plaintiff can effectively "plead[ ] himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009). Where, as here, the relevant dates of the events giving rise to the claims are clearly set out in the allegations in the complaint, dismissal based on the statute of limitations is appropriate. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) ("We find it appropriate here to consider the statute of limitations because the relevant dates are set forth unambiguously in the complaint.").

The § 1981 claims against Batjer and Northwestern Memorial Hospital are subject to a two-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (explaining that actions based on the 1991 amendment to § 1981 are governed by the four-year statute of limitations of 28 U.S.C. § 1658, but actions arising under the pre-amendment version of § 1981 are governed by the

state-law statute of limitations);[4] *Campbell v. Forest Preserve Dist. of Cook Cnty.*, 752 F.3d 665, 667-68 (7th Cir. 2014) (stating that there is a two-year statute of limitations for pre-amendment § 1981 claims in Illinois). Counts 1 and 3, which are based on Rivas's arrest for trespassing, clearly occurred outside the two-year period. *See* Am. Compl. ¶¶ 77-83 (alleging that Defendants "restrained, detained, seized, arrested, charged, and/or prosecuted [Rivas] wrongfully" thereby "depriv[ing] [Rivas] of the full and equal benefit of all laws and proceedings for the security of persons"); *id.* ¶¶ 88-100 (alleging that Defendants retaliated against Rivas "when they detained [him], falsely arrested, and brought false criminal charges against [Rivas]"). Rivas does not allege that Batjer had any participation in the arrest apart from telling hospital security about Rivas in May 2008. *See* Am. Compl. ¶ 37. The latest action taken by any employee of Northwestern Memorial Hospital was on December 4, 2008, at Rivas's sentencing. *Id.* ¶ 69. Rivas's initial complaint was filed on April 25, 2011, more than two years after the last of these actions by Defendants. *See* Compl. Even if Rivas had alleged any involvement by Batjer or Northwestern Memorial Hospital up through the April 23, 2009 termination of supervision (he did not), the claim would be outside the two-year statute of limitations. At the absolute latest, the last action taken by any Defendant in the criminal trespass action was

---

[4]Rivas's claims do not arise under the 1991 amendment to § 1981, which is governed by a four-year statute of limitations. *See Jones*, 541 U.S. at 382. The amendment expanded § 1981 to cover discriminatory conduct that took place after the formation of a contract, and it is typically applied to claims like hostile work environment, wrongful discharge, and refusal to transfer. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004). Rivas does not allege that he had any preexisting contractual relationships with any of the parties. His claims focus on equal benefit of all laws and the right to make and enforce contracts, claims covered by the pre-amendment § 1981.

April 23, 2009, when Rivas's period of supervision was terminated. *Id.* ¶ 70. Accordingly, Rivas's § 1981 claims against Batjer and Northwestern Memorial Hospital based on the trespassing arrest (Counts 1 and 3) are dismissed as untimely.

In Count 2, Rivas alleges that "the restraint, seizure, arrest, and prosecution … interfered with and harmed [Rivas's] employment prospects." Am. Compl. ¶ 86. As discussed above, all of Batjer and Northwestern Memorial Hospital's actions related to the arrest and seizure itself occurred more than two years before the suit was filed. The factual allegations that describe Batjer's interference with Rivas's employment prospects also fall outside the statutory period. In 1997, Batjer refused to acknowledge Rivas's application for a neurosurgery residency position. *Id.* ¶ 26. In 2003, Batjer told Rivas's supervisor to fire Rivas from the neurosurgical residency training program at Children's Memorial Hospital. *Id.* ¶ 29. Batjer also convinced his colleague to cancel Rivas's interviews for Northwestern Memorial Hospital's neurosurgery residency program later that year. *Id.* ¶ 32. Rivas cannot timely state a claim for interference with employment prospects that occurred eight years before he filed his complaint.

Rivas also alleges (without setting forth any date on which it occurred) that he has "applied for several jobs[,] but has been rejected on the basis of the criminal trespass arrest showing on his background check." *Id.* ¶ 71. But this vague allegation is not sufficient to overcome the statute-of-limitations problems in the

complaint.[5] At the motion to dismiss stage, Rivas's allegations must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The allegation that Rivas was rejected from "several jobs," without more, does not contain sufficient factual matter to meet the notice pleading standard.[6] These sparse allegations do not give Batjer and Northwestern Memorial Hospital "fair notice of … the grounds upon which [Rivas's § 1981 claim] rests." *Twombly*, 550 U.S. at 555. Rivas cannot rely on this allegation, and his more specific factual allegations occurred well outside the two-year statute of limitations. His § 1981 claim against Batjer and Northwestern Memorial Hospital for interference with prospective contracts (Count 2) is therefore dismissed.[7]

---

[5]Although the Court would expansively construe any *pro se* filings made by Rivas (like his response to the motions to dismiss, had he filed one), his Amended Complaint was filed by an attorney. Moreover, it is worth noting that Rivas was in fact convicted of the criminal trespass, and he does not allege that the conviction was vacated, only that the sentence of supervision has terminated.

[6]In the same paragraph, Rivas also alleges that Batjer told Dr. Chabel at University of Illinois, Chicago that Rivas had been impersonating a doctor at Northwestern Memorial Hospital and improperly seeing patients. Am. Compl. ¶ 71. Rivas claims that, as a result of these statements, he was asked to leave a seminar at University of Illinois, Chicago. *Id.* Although this portion of the allegation contains more factual matter, which is taken as true at this stage in the litigation, it is not relevant to Rivas's § 1981 interference with prospective contracts claim. The contracts-interference claim deals only with Defendants' interference with Rivas's employment prospects, and the seminar allegation is unrelated to Rivas's employment.

[7]Rivas also brings § 1981 claims against several unserved Defendants: Scott Levy, Cynthia Fleck, and Levy Security Corporation (Security Defendants); Dr. Christopher Gonzalez, Dr. Colin William Howden, Northwestern Medical Faculty Foundation, and Northwestern Dental Center (Treating Defendants); Steven Thill; the estate of Dr. Christopher Getch; and Dr. Bernard Bendock. *See* Am. Compl. Because the arguments made on behalf of the served Defendants apply equally to the unserved Defendants, Counts 1-3 are dismissed against the unserved Defendants as well. Rivas's factual allegations about the Security Defendants unambiguously set forth the dates on which the events occurred, and those events occurred no later than December 4, 2008, well outside the two-

Rivas also brings these § 1981 claims against the City Defendants, but § 1981 is inapplicable to state actors. *See Campbell*, 752 F.3d at 671 ("§ 1983 remains the exclusive remedy for violations of § 1981 committed by state actors."). Rivas thus cannot state a claim under § 1981 against the City Defendants. Even if the § 1981 claims were construed as claims based on § 1983, they would be time-barred. For § 1983 claims, courts "look to the personal injury laws of the state where the injury occurred to determine the statute of limitations." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Rivas's alleged injuries all occurred in Illinois. His § 1983 claims, therefore, are governed by a two-year statute of limitations. *Id.*

Again, because Rivas has explicitly alleged the dates on which all of the City Defendants' actions took place, dismissal based on the statute of limitations is appropriate. *See Brooks*, 578 F.3d at 579. As with Batjer and Northwestern Memorial Hospital, all of the City Defendants' actions occurred outside the two-year window. In the § 1981 claims, Rivas alleges that the City Defendants wrongfully arrested him, filed charges against him, and prosecuted him for the trespass. Am. Compl. ¶¶ 78, 82, 86, 91, 93. At the absolute latest, any participation in the trespass proceedings ended on April 23, 2009, when Rivas's supervision was terminated. Am. Compl. ¶ 70. Rivas has made no factual allegations that the City Defendants took

year limitations period. *Id.* ¶¶ 44-53, 63-64, 66, 69. The specific factual allegations against Getch and Bendock are also time-barred, *id.* ¶¶ 33, 36, and the undated allegations are not specific enough to give Defendants notice of the basis of his claim, *id.* ¶ 71. The factual allegations against Steven Thill state only that he testified at Rivas's trial. *Id.* ¶¶ 66-67. The trial took place on December 3, 2008, outside the statute of limitations. *Id.* ¶ 66. Finally, Rivas alleges that the Treating Defendants retaliated against him by refusing him medical treatment. *Id.* ¶ 95. But again, Rivas clearly alleges that these acts occurred in September and December 2008, outside the limitations period. *Id.* ¶¶ 56-57.

any action after that date. Rivas's § 1981 claims against the City Defendants are therefore dismissed.

## B. Unreasonable Seizure (Count 4)

In Count 4, Rivas alleges that the four Defendant Officers unreasonably seized Rivas in violation of his Fourth Amendment rights (as incorporated against the states through the Fourteenth Amendment). Am. Compl. ¶¶ 102-03. This claim must also be dismissed on timeliness grounds.[8] Claims under § 1983 are governed by a two-year statute of limitations in Illinois, *Kelly*, 4 F.3d at 511, and a claim asserting that a search or seizure violated the Fourth Amendment accrues immediately, *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). That is, the claim accrues at the time of the unlawful seizure. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 897 (7th Cir. 2001) (explaining that unreasonable seizure claims can go forward at the time of arrest because "the injury of being detained illegally is compensable regardless of whether the plaintiff is later convicted or even prosecuted"). The allegedly unlawful seizure occurred on July 30, 2008, and charges were filed on July 31, 2008. Am. Compl. ¶¶ 53-54, 62. For his claim to be timely, Rivas needed to file his complaint by July 31, 2010 at the latest. It was not filed until April 25, 2011. The claim is therefore time-barred, and it is dismissed on that basis.[9]

---

[8]As discussed above, dismissal based on the statute of limitations is appropriate where the dates are explicitly set forth in the complaint. *Brooks*, 578 F.3d at 579.

[9]Because the claim is clearly time-barred, the Court need not address the City Defendants' arguments that they had probable cause to arrest Rivas or that they are protected by qualified immunity.

### C. Conspiracy (Count 5)

Rivas also brings a conspiracy claim under §§ 1983 and 1985 against all served Defendants. He alleges that Defendants entered into a conspiracy to falsely arrest him, treat him unequally in a security proceeding, and interfere with his prospective employment in violation of his constitutional rights. Am. Compl. ¶ 105. But under both §§ 1983 and 1985, conspiracy is not a freestanding claim. There must be an underlying deprivation of Rivas's constitutional rights for his conspiracy claims to proceed. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions."); *Bublitz v. Cottey*, 327 F.3d 485, 488 n.3 (7th Cir. 2003) (stating that conspiracy liability under § 1985 requires proof of an underlying constitutional deprivation). Because the claims alleging the underlying constitutional violation (Counts 1, 2, 3 and 4) have been dismissed, the conspiracy claim must be dismissed as well.

The conspiracy claim is also untimely. For alleged constitutional deprivations arising in Illinois, the statute of limitations for both §§ 1983 and 1985 claims is two years. *See Kelly*, 4 F.3d at 511 (§ 1983); *Wilson v. Giesen*, 956 F.2d 738, 741 n.4 (7th Cir. 1992) (§ 1985). Rivas alleges that Defendants engaged in a conspiracy to violate his rights by bringing false charges against him. Am. Compl. ¶¶ 105-06. But, as discussed above, Rivas has unambiguously set out the dates of all of Defendants' actions in the alleged false arrest and the following prosecution. Even taking a very expansive view of Rivas's allegations, these events took place more than two years before the filing of this action. *See* Am. Compl. ¶ 70 (asserting that the allegedly

false charges were ultimately terminated on April 23, 2009). The claim is time-barred, and it is therefore dismissed.[10]

### D. *Monell* Claim (Count 6)

In Count 6, Rivas pleads a claim against Northwestern Memorial Hospital based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under the *Monell* theory of liability, a plaintiff may state a claim against a government entity if "an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). But Northwestern Memorial Hospital is not a government entity. *See* Northwestern's Mot. Dismiss at 6. *Monell* liability can only attach to a private actor if there is "a sufficiently close nexus between the state and the private conduct so that the action may be fairly treated as that of the State itself." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996) (internal quotation marks and citation omitted). Generally, a private party's actions will only be deemed to be under color of law "when the state either (1) effectively directs or controls the actions of the

---

[10]Rivas also brings the conspiracy count against the unserved Defendants: the Security Defendants, the Treating Defendants, Thill, Getch, Bendock, and Laura Lee Sova. The same arguments advanced by the served Defendants also justify dismissal of the claims against the unserved Defendants. First, conspiracy is not a free-standing claim under §§ 1983 or 1985. *See Smith*, 550 F.3d at 617; *Bublitz*, 327 F.3d at 488 n.3. Additionally, all of the factual allegations about the actions of each defendant clearly set out the dates of the relevant events, and those events took place outside the limitations period. *See* Am. Compl. ¶¶ 33, 36, 44-53, 56-57, 63-67, 69. Although there are no explicit date in the factual allegations about Sova, the relevant time period is clear from surrounding allegations. Rivas alleges that Sova "used her influence" to try to initiation or to consolidate a criminal damage to property claim with the criminal trespass claim arising from the incident at Northwestern Memorial Hospital. *Id.* ¶¶ 65, 133. He also alleges that she meddled with the criminal trespass court proceedings. *Id.* Because Rivas alleges that the trial occurred on December 3, 2008, *id.* ¶ 66, it is clear that Sova's alleged acts took place on or before that date, which is outside the two-year statute of limitations.

private party such that the state can be held responsible for the private party's decision; or (2) delegates a public function to a private entity." *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004) (internal quotation marks and citation omitted). Rivas does not allege any facts (or even conclusions) that would support an inference that the actions of Northwestern Memorial Hospital, a private entity, met this standard.

Moreover, like Rivas's conspiracy claim, his *Monell* claim requires an underlying constitutional violation. *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010). The alleged constitutional deprivation that forms the basis of Rivas's *Monell* claim occurred when Rivas was detained and harassed because of his race and national origin by security personnel at the hospital. Am. Compl. ¶¶ 108-09. Rivas's § 1981 claim based on this alleged unequal treatment (Count 1) has been dismissed. Without the underlying constitutional violation, Rivas cannot state a claim for *Monell* liability.

Even if Rivas had sufficiently pled a *Monell* claim against Northwestern Memorial Hospital, the claim would be time-barred. The *Monell* theory of liability typically arises under § 1983.[11] *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 790 (7th Cir. 2014). As discussed above, there is a two-year statute of limitations for § 1983 claims in Illinois. *Kelly*, 4 F.3d at 511. Claims under § 1983 "accrue when the plaintiff knows or should know that his or her constitutional

---

[11]The Complaint alleges that the *Monell* claim is premised on § 1985. This does not change the analysis, because § 1985 is also governed by a two-year statute of limitations in Illinois. *See Wilson*, 956 F.2d at 741 n.4 ("The same statute of limitations applies to claims under § 1983 and § 1985(3).")

rights have been violated." *Id.* (internal quotation marks and citation omitted); *see also Walden v. City of Chicago*, 755 F. Supp. 2d 942, 958 (N.D. Ill. 2010); *Castro v. City of Chicago*, 2013 WL 427109, at *3 (N.D. Ill. Feb. 1, 2013). In his *Monell* claim, Rivas alleges that Northwestern Memorial Hospital's policy of allowing its security guards to detain individuals without reasonable cause and on the basis of racial or national origin discrimination was the moving force behind the violation of his constitutional rights. Am. Compl. ¶¶ 108-10. Rivas knew that he was wrongfully detained at the time that it occurred. Even if he did not, the absolute latest he would have known that his detention by Northwestern Memorial Hospital's security guards was wrongful was on April 23, 2009, when his court-ordered supervision ended. Even that date was more than two years before he filed his original complaint, and the claim is therefore untimely. [12]

### E. State-Law Malicious Prosecution (Count 7)

In Count 7, Rivas brings a malicious-prosecution claim under Illinois law against all Defendants. To state a claim for malicious prosecution, a plaintiff must show that the proceedings terminated in his favor. *See Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010); *Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010) (applying Illinois law). Although Rivas alleges that the charges terminated in his favor when his court-ordered supervision was terminated early, Am. Compl. ¶ 70, he concedes that a jury convicted him of criminal trespass, *id.* ¶ 68. A jury's

---

[12]Rivas also brings the *Monell* claim against Northwestern Medical Faculty Foundation and Northwestern Dental Center. That claim fails based on the same arguments made on behalf of Northwestern Memorial Hospital. *See* Am. Compl. ¶¶ 56-57 (unambiguously setting forth the dates on which the unserved Defendants took the allegedly adverse actions).

determination of guilt is *not* a termination in Rivas's favor. *See Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) (applying Illinois law and stating that "a plaintiff cannot predicate his malicious prosecution action on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused"). Even if there had not been an express finding of guilt, a term of supervision is not a termination in Rivas's favor under Illinois law. *See Hajawii v. Venture Stores, Inc.*, 465 N.E.2d 573, 575 (Ill. App. Ct. 1984). Because cannot show that the proceedings terminated in his favor, he cannot state a claim for malicious prosecution.

The statute of limitations also bars the claim. Under Illinois law, a claim for malicious prosecution generally must be brought within two years after the cause of action accrues. 735 ILCS 5/13-202. For actions against a municipality or its employees, a malicious prosecution claim must be brought within one year after the cause of action accrues. 745 ILCS 10/8-101; *see also Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004). Under both statutes of limitations, a claim for malicious prosecution accrues when the proceedings are terminated in the plaintiff's favor. *Ferguson*, 820 N.E.2d at 459. Even if, as Rivas alleges, the proceedings terminated in his favor (really, it did not) when his supervised release was terminated on April 23, 2009, the malicious-prosecution claim is untimely under either statute of limitations.[13]

_____

[13]Rivas also brings the state-law claim for malicious prosecution against the Security Defendants, Thill, Getch, and Sova. Again, the claims advanced on behalf of the served Defendants are equally applicable to the unserved Defendants. The proceedings did not terminate in Rivas's favor, and the claim is time-barred. *See* Am. Compl. ¶ 70 (setting out

## F. State-Law False Imprisonment (Count 8)

Rivas also brings a state-law claim for false imprisonment against all Defendants. In this claim, Rivas alleges that the Northwestern Memorial Hospital security guards, Officer Howard, and Officer Markvart falsely imprisoned him when they restrained him at Northwestern Memorial's security office. Am. Compl. ¶ 121. He alleges that Bean, Markvart, Howard, and Sarlitto falsely imprisoned him when they held him at the police station. *Id.* ¶ 122. He then alleges that the City and Northwestern Memorial are liable on a *respondeat superior* theory. *Id.* ¶¶ 123-24. Although the complaint also brings this claim against Batjer, the only mention of Batjer comes in the last paragraph of the claim, in which Rivas alleges that "Because of these acts and/or omissions, Plaintiff underwent and is undergoing irreparable damages. Batjer … [is] liable under the supplemental state law claim of False Imprisonment." *Id.* ¶ 126.

Like the malicious-prosecution claim, the false-imprisonment claim is untimely. For the claim against Batjer and Northwestern Memorial Hospital, the statute of limitations is two years after the cause of action accrues. 735 ILCS 5/13-202. For the claim against the City Defendants, the statute of limitations is one year. 745 ILCS 10/8-101. For all Defendants, a claim for false imprisonment accrues when the plaintiff is held pursuant to a warrant or other judicial process. *National Cas. Co. v. McFatridge*, 604 F.3d 335, 344-45 (7th Cir. 2010) (applying Illinois law). Rivas's arrest occurred on July 30, 2008, Am. Compl. ¶ 55, and criminal charges

---

the date on which Rivas alleges that the charges terminated in his favor). The claims against the unserved Defendants are likewise dismissed.

were filed on July 31, 2008, *id.* ¶ 62. Rivas was certainly held pursuant to judicial process by the time he was tried on December 3, 2008. *Id.* ¶ 68. Rivas's claim for false arrest therefore accrued no later than December 2008, well outside both the one- and two-year limitations periods. The Illinois false-imprisonment claim is dismissed.[14]

## G. State-Law Defamation (Count 9)

Rivas's final claim is for defamation under Illinois law.[15] He alleges that Batjer defamed him when he "communicated to other individuals, some from another hospital, that Dr. Rivas was arrested for impersonating a Northwestern Memorial Hospital Neurosurgeon." Am. Compl. ¶ 129. More specifically, he claims that Batjer told Dr. Chabel of University of Illinois, Chicago that Rivas impersonated a doctor at the hospital. *Id.* ¶ 71. As a result of Batjer's statement, Chabel asked Rivas to leave a seminar at the University. *Id.* Rivas also alleges that Northwestern Memorial Hospital is liable for Batjer's defamatory statements on a theory of *respondeat superior*. *Id.* ¶ 130.

---

[14]Rivas also brings the state-law claim for false imprisonment against the Security Defendants, Thill, and Getch. The arguments advanced by the served Defendants also require that the claims against the unserved Defendants be dismissed. Am. Compl. ¶ 68 (setting forth the date on which Rivas was held pursuant to judicial process).

[15]Illinois recognizes two types of defamation claims: defamation *per se* and defamation *per quod*. *See Knafel v. Chicago Sun-Times, Inc.*, 413 F.3d 637, 639 (7th Cir. 2005). For claims of defamation *per quod*, damages are not presumed. A plaintiff must therefore affirmatively plead pecuniary damages arising from the alleged defamatory statement. *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 947 n.3 (Ill. App. Ct. 1997) (noting that special damages "must be alleged and proved when the statement is defamatory *per quod*"). Although Rivas uses the phrase "special damages" in his defamation count, he provides no factual allegations that would suggest that he suffered actual pecuniary harm as a result of the alleged defamatory statements. His claim will therefore be construed as a claim of defamation *per se*.

Batjer and Northwestern Memorial Hospital again argue that Rivas's defamation claim is time-barred. In Illinois, the statute of limitations for defamation expires one year after the cause of action accrues. 735 ILCS 5/13-201. The claim accrues when the defamatory material is published. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 459 (Ill. App. Ct. 2010). Batjer and Northwestern Memorial Hospital argue that Rivas "has failed to allege that the defamatory statements supposedly made by [Defendants] were published between April 25, 2010 and April 25, 2011." Batjer's Mot. Dismiss at 9-10; Northwestern's Mot. Dismiss at 10. But, as discussed above, untimeliness is an affirmative defense. Unless the complaint sets forth conclusively that the elements of the affirmative defense exist, dismissal under 12(b)(6) is not appropriate. *Logan*, 644 F.3d at 582-83. Unlike most of the claims in the complaint, the allegation that Batjer made statements to Chabel does not specify the date on which those events occurred. Am. Compl. ¶ 71. It is therefore inappropriate to dismiss this claim on statute-of-limitations grounds.[16]

---

[16]Rivas brings the state-law defamation claim against the Security Defendants, Thill, and Sova as well. Although the statute-of-limitations defense is inapplicable to Batjer and Northwestern Memorial Hospital, it requires dismissal of the claims against these unserved Defendants. As noted above, the statute of limitations for defamation is one year. 735 ILCS 5/13-201. In his complaint, Rivas sets out the dates on which the publication of statements made by these unserved Defendants took place, and all of the dates are outside the one-year period. According to Rivas's factual allegations, the latest that Thill or any Security Defendant spoke about Rivas was at his criminal-trespass sentencing on December 4, 2008. Am. Compl. ¶¶ 66-69. As discussed above, the only factual allegation about Sova concerns actions she took surrounding Rivas's trial for criminal trespass, which took place on December 3, 2008. *Id.* ¶¶ 65-66. The defamation claims against the Security Defendants, Thill, and Sova are therefore dismissed.

However, Rivas's failure to specify when the alleged defamatory statements were said necessitates the claim's dismissal. Although there is no heightened pleading standard for defamation, the claim "must be pled with sufficient precision and particularity." *Moore*, 932 N.E.2d at 459-60. Typically, the complaint must set out when the statements were made, to whom, and the content of the alleged defamation. *Id.*; *Grundhoefer v. Sorin*, 20 N.E.3d 775, 783 (Ill. App. Ct. 2014). The only factual allegation that even comes close to this requirement is Rivas's claim that Batjer spoke to Dr. Chabel at University of Illinois, Chicago. Although Rivas identifies to whom the statement was made, and the general subject of the statement, he does not provide any information as to when this statement was made (even the year) or any other factual context that would allow Defendants to respond to Rivas's allegations. In his complaint, Rivas must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S at 555 (alteration in original). The one sentence in the complaint does not put Batjer and Northwestern Memorial Hospital on sufficient notice of the claim. Because the defamation count does not provide even a general time period in which the alleged defamatory statement was made, or any other factual context, Defendants have not been given fair notice of the basis of Rivas's claim. He has failed to do so, and the defamation claim against Batjer and Northwestern Memorial Hospital must therefore be dismissed.[17]

_____

[17]The heading for Count 9 states that the defamation claim is brought only against Batjer and Northwestern Memorial Hospital (of those Defendants who were served), but the final paragraph of the count mentions the City Defendants. *See* Am. Compl. ¶ 134. Rivas has not alleged that the City Defendants have made any defamatory statements

# IV. Conclusion

For the reasons discussed above, Defendants' motions to dismiss are granted. The claims against the unserved Defendants are also dismissed because, as stated above, the arguments advanced on behalf of the served Defendants are equally applicable to the unserved Defendants. *See*, *supra*, notes 7, 10, 12-14, 16-17.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 18, 2015

---

against him (and certainly not with the particularity required). If Rivas intended to bring the defamation claim against the City Defendants as well, it is dismissed for failure to state a claim. Rivas also brings this claim against Getch and Northwestern Medical Faculty Foundation. Because the allegations against Getch are identical to those against Batjer, *see id.* ¶ 71, the claims against him are dismissed for the same reason. Rivas alleges that Northwestern Medical Faculty Foundation is liable on the theory of *respondeat superior* for the actions of Batjer and Getch. *Id.* ¶ 131. Because Rivas does not state a claim against Batjer or Getch for defamation, the claim against Northwestern Medical Faculty Foundation is also dismissed.